642 So.2d 1081 (1994)
LEGAL ENVIRONMENTAL ASSISTANCE FOUNDATION, INC., Petitioner,
v.
BOARD OF COUNTY COMMISSIONERS OF BREVARD COUNTY, Respondent.
No. 83039.
Supreme Court of Florida.
September 29, 1994.
David A. Ludder, Legal Environmental Assistance Foundation, Inc., Tallahassee, for petitioner.
Nina L. Boniske, Bd. of County Com'rs of Brevard County, Melbourne, for respondent.
GRIMES, Chief Justice.
This cause is before the Court on the following certified question of law from the United States Court of Appeals in Legal Environmental Assistance Foundation, Inc. v. Board of County Commissioners, 10 F.3d 1579 (11th Cir.1994):
UNDER EXISTING FLORIDA LAW, NOT LIMITED TO THE STATE'S EPA-APPROVED UNDERGROUND INJECTION CONTROL PROGRAM, WHERE A HOLDER OF AN EXPLORATORY WELL CONSTRUCTION AND TESTING PERMIT HAS MADE A TIMELY APPLICATION FOR AN INJECTION WELL OPERATING PERMIT, DOES THE CONSTRUCTION AND TESTING PERMIT CONTINUE IN EFFECT *1082 PAST ITS EXPIRATION DATE UNTIL THE FLORIDA DEPARTMENT OF ENVIRONMENTAL REGULATION HAS ACTED ON THE PENDING APPLICATION?
Id. at 1585. We have jurisdiction under article V, section 3(b)(6) of the Florida Constitution.
In 1974, Congress enacted the Safe Drinking Water Act. Pub.L. No. 93-523, 88 Stat. 1660 (codified as amended at 42 U.S.C. §§ 300f-j (1988)). To protect underground sources of drinking water, the Act created a regulatory program for underground injection to be administered by the Environmental Protection Agency (EPA), or a state if EPA approval is obtained for the state's underground injection control (UIC) program. Congress established several minimum requirements for state UIC programs, including the requirement that underground injection be prohibited unless authorized by permit. Florida's EPA-approved UIC program provides for permits for several classes of injection wells.[1]
On December 21, 1982, the Board of Commissioners of Brevard County applied to the Department of Environmental Regulation (DER) for a Class I Exploratory Well Construction and Testing Permit for the South Beaches Regional Wastewater Treatment Plant. On December 23, 1983, a permit was issued providing that water for testing could come only from the Indian River and prohibited the injection of sewage effluent. Although the permit had an initial expiration date of January 1, 1985, the expiration date was modified several times and was finally extended to December 20, 1988.
On December 29, 1986, the board applied for a Class I Injection Well Operating Permit to use the same well to dispose of treated sewage. This application is still pending. However, in a letter to the board dated February 26, 1987, DER confirmed its earlier verbal approval for the county to begin using the well for treated sewage disposal. The well has been used intermittently for this purpose since December 1988.
The Legal Environmental Assistance Foundation, Inc. (LEAF) filed an action in federal district court, alleging that the board has been operating its South Beaches facility without a permit since December 21, 1988. The board responded by arguing that its construction and testing permit continues to be effective during the period that its application for the operating permit is pending. The court granted the board's motion for summary judgment, holding that the construction and testing permit continues in effect until DER acts upon the board's application for an operating permit. LEAF appealed this decision to the Eleventh Circuit Court of Appeals which certified the above stated question to this Court.
We begin our discussion by examining the law pertaining to underground injection permits. Federal law provides that once a UIC program is established, all underground injections are unlawful unless authorized by a permit or a rule. 42 U.S.C. § 300h (b)(1)(A) (1988). The pertinent federal regulation pertaining to expiring underground injection permits provides that:
A State authorized to administer the UIC program may continue either EPA or State-issued permits until the effective date of the new permits, if State law allows. Otherwise, the facility or activity is operating without a permit from the time of expiration of the old permit to the effective date of the State-issued new permit.
40 C.F.R. § 144.37(d) (1993). Therefore, upon application for a new permit, the State may continue a previously issued permit until the effective date of the new permit if "State law allows."
The Florida statute which addresses the continuation of expiring licenses is section 120.60(6), Florida Statutes (1993), which is contained in the Administrative Procedure *1083 Act (APA).[2] Although the statute provides general guidance on expiring permits, it does not specifically address expiring underground injection permits. If anything, the legislative history of section 120.60 favors LEAF's position because a prior version of the statute allowed extensions of existing permits upon a timely application for renewal of a license or for a new license with reference to any activity of a continuing nature. The statute as now written does not appear to be applicable to the issue before us because it obviously refers only to the renewal of the same kind of license rather than a different kind of license.
The most pertinent Florida law on the subject and the one which most directly speaks to the issue is rule 17-4.090(1) of the Florida Administrative Code, which was promulgated under the authority of chapter 403, Florida Statutes.[3] This rule[4] reads as follows:
17-4.090 Renewals.
(1) Renewals. Prior to 135 days before the expiration of a hazardous waste operation permit, 180 days before the expiration of hazardous waste closure permit, or sixty days before the expiration of any Department operation permit, the permittee shall apply for a renewal of a permit using forms incorporated by reference in the specific rule chapter for that kind of permit. A renewal application shall be timely and sufficient. If the application is submitted prior to the days specified above before expiration of the permit, it will be considered timely and sufficient. If the renewal application is submitted at a later date, it will not be considered timely and sufficient unless it is submitted and made complete prior to the expiration of the operation permit. When the application for renewal is timely and sufficient, the existing permit shall remain in effect until the renewal application has been finally acted upon by the Department or, if there is court review of the Department's final agency action, until a later date is required by Section 120.60, F.S.
On several occasions, DER officials have interpreted rule 17-4.090(1) to mean that it allows for the continuation of an existing construction and testing permit past the expiration date when the licensee has timely applied for an operating permit.[5]
The general rule is that the construction of a regulation by the agency charged with its enforcement and interpretation is entitled to great deference. Pan Am World Airways, Inc. v. Florida Pub. Serv. Comm'n, 427 So.2d 716 (Fla. 1983). However, such *1084 judicial deference is not absolute. Woodley v. Department of Health & Rehabilitative Servs., 505 So.2d 676, 678 (Fla. 1987). When an agency's construction amounts to an unreasonable interpretation, or is clearly erroneous, it cannot stand. Id. at 678.
DER has interpreted rule 17-4.090(1) to apply to construction and testing permits as well as to operating permits and also to mean that applying for an operating permit can be considered seeking "renewal" of a construction and testing permit. Therefore, according to the department, when an application for a new permit references an activity of a continuing nature which has been authorized under the existing permit, the expiration date of the existing permit is extended. We cannot agree.
The department's interpretation conflicts with the plain meaning of the regulation. First, rule 17-4.090(1) speaks only to expiring operating permits, not expiring construction permits. Further, by its own terms, the rule is limited in its application to the renewal of existing permits. By its plain meaning, a "renewal" does not apply to something of a different nature. It does not operate to extend the expiration date of an existing permit when the application submitted is for a new and different permit. An operating permit and a construction and testing permit are two different types of permits. The distinction between the two categories of permits is recognized throughout the rules pertaining to underground injection control. We reject the department's argument that because a construction permit usually includes authority to operate for a short period of time, this means that applying for an operating permit is the equivalent of seeking renewal of a construction permit. Thus, we hold that neither section 120.60(6) nor rule 17-4.090(1) operates to extend the expiration date on a construction and testing permit when an application for an operating permit has been submitted.
There being no other applicable Florida law pertaining to the issue at hand, we answer the certified question in the negative and return this cause to the Eleventh Circuit Court of Appeals for further proceedings.
It is so ordered.
OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The Florida Administrative Code authorizes three types of permits for Class I injection wells: (1) Class I  Exploratory Well Construction and Testing Permit; (2) Class I  Test/Injection Well Construction and Testing Permit; and (3) Class I  Injection Well Operating Permit. Fla. Admin. Code Ann. r. 17-28.320, 17-28.330, 17-28.340 (1990).
[2] Ch. 120, Fla. Stat. (1993). The Administrative Procedure Act applies to all administrative agencies in Florida. Section 120.60(6) provides:

When a licensee has made timely and sufficient application for the renewal of a license which does not automatically expire by statute, the existing license shall not expire until the application has been finally acted upon by the agency or, in case the application is denied or the terms of the license are limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.
[3] Chapter 403, Florida Statutes, known as the "Florida Air and Water Pollution Control Act," authorizes the State through DER to regulate underground injection including the issuance of permits. The Act declares that it is Florida's policy that existing and potential drinking water resources shall remain free from harmful quantities of contaminants. § 403.021(10), Fla. Stat. (1993).
[4] This rule was amended to its current form on August 31, 1988. The court of appeals decided as a matter of federal law that the current rule may be considered as part of existing state law even though the amendment has not been approved by the EPA as part of Florida's UIC program.
[5] In the April 15, 1991, official response to LEAF's petition challenging the interpretation of the permitting rules, the Secretary of DER stated that pursuant to rule 17-4.090, the County's application for an operating permit was "a timely submittal and hence extends the construction permit, including the operational testing phase with effluent, until such time as the operating permit application is either issued or denied."

On July 26, 1991, in response to a request from LEAF, the DER Bureau Chief for Drinking Water and Ground Water Resources interpreted rule 17-4.090 and concluded that the construction permit conditions remained in effect at the South Beaches facility because there had been a timely application for an operating permit.
Also, a February 4, 1991, legal opinion issued by DER's Office of General Counsel in a case similar to the instant case stated that "[a]pplying for an operation permit can be considered seeking `renewal' of a construction permit."