Mr. Dirk M. Smits School Board Attorney Monroe County School Board Post Office Box 1788 Key West, Florida 33040
Dear Mr. Smits:
On behalf of the Monroe County School Board, you have asked for my opinion on substantially the following questions:
1. When does the freeze on non-capital local school property taxes required by section 212.055(6)(d), Florida Statutes, become effective?
2. Can the requirement of a freeze on non-capital local school property taxes be avoided by the simultaneous adoption of a school capital outlay surtax pursuant to section 212.055(6), Florida Statutes, and an operating budget referendum adopted pursuant to section 1011.71, Florida Statutes, which would provide additional non-capital funding for school budgetary needs?
The Monroe County School Board enacted a one-half cent sales tax that became effective on January 1, 1996, and will expire on December 31, 2005. In order to plan for the remainder of the capital improvement projects necessary to complete the district's capital program, the district has decided to conduct a referendum in March 2004 to continue the surtax pursuant to section 212.055, Florida Statutes.
Question One
Article VII, section 9(a), Florida Constitution, provides that "[c]ounties, school districts, and municipalities shall . . . be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes . . . on intangible personal property and taxes prohibited by this constitution." The exercise of the power of taxation, therefore, results from a constitutional authorization to school boards, implemented by statute, rather than the exercise of home rule powers pursuant to section 1001.32(2), Florida Statutes (formerly section 230.03(2), Florida Statutes 2001).[1]
Section 212.055(6)(a), Florida Statutes, authorizes the school board of each county to levy a discretionary sales surtax at a rate not to exceed 0.5 percent. The levy must be made pursuant to a school board resolution that is conditioned to take effect only upon approval by a majority vote of those county electors who vote in a referendum on the matter. The resolution providing for the surtax must
"set forth a plan for use of the surtax proceeds for fixed capital expenditures or fixed capital costs associated with the construction, reconstruction, or improvement of school facilities and campuses which have a useful life expectancy of 5 or more years, and any land acquisition, land improvement, design, and engineering costs related thereto. . . ."[2]
Neither the proceeds of the surtax nor any accrued interest may be used for operational expenses.
Effective concurrently with the legislative authorization to impose a school capital outlay surtax, the Legislature requires a mandatory freeze on the millage rate of non-capital local school property taxes. Section212.055(6)(d), Florida Statutes, specifically provides:
"Any school board imposing the surtax shall implement a freeze on noncapital local school property taxes, at the millage rate imposed in the year prior to the implementation of the surtax, for a period of at least 3 years from the date of imposition of the surtax. This provision shall not apply to existing debt service or required state taxes."
You have asked when the freeze imposed pursuant to section 212.055(6)(d), Florida Statutes, takes effect. The statutory language clearly provides that the freeze is effective for a period of at least three years "from the date of imposition of the surtax." Where the language of a statute is plain, resort to rules of statutory interpretation is unnecessary to ascertain intent as the Legislature is held to have intended what it plainly expressed.[3] A legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.[4] Thus, a school board has no discretion in the matter of imposing a freeze on non-capital local school property taxes in the event a school capital outlay surtax is adopted.
With regard to administration of the taxes authorized by section 212.055, Florida Statutes, this section requires that "[t]axable transactions and administrative procedures shall be as provided in s. 212.054."[5] This section specifically provides that
"[n]o discretionary sales surtax or increase or decrease in the rate of any discretionary sales surtax shall take effect on a date other than January 1. No discretionary sales surtax shall terminate on a day other than December 31."[6]
Thus, a school capital outlay surtax imposed pursuant to section212.055(6), Florida Statutes, must take effect on January 1 following its approval by the voters and a freeze on non-capital local school property taxes that is effective "from the date of imposition of the surtax" would also be effective on that date. Assuming its approval by the electors, the proposed school capital outlay surtax by the Monroe County School Board would become effective on January 1, 2006, and the non-capital local school property taxes must be frozen at the millage rate imposed in 2005.
Question Two
You have also asked whether the requirement of a freeze on non-capital local school property taxes may be avoided by the simultaneous adoption of a school capital outlay surtax pursuant to section 212.055(6), Florida Statutes, and an operating budget referendum adopted pursuant to section1011.71(6), Florida Statutes, which would provide additional non-capital funding for school budgetary needs.
Section 1011.71(6), Florida Statutes, states:
"In addition to the maximum millage levied under this section and the General Appropriations Act, a school district may levy, by local referendum or in a general election, additional millage for school operational purposes up to an amount that, when combined with nonvoted millage levied under this section, does not exceed the 10-mill limit established in s. 9(b), Art. VII of the State Constitution. Any such levy shall be for a maximum of 4 years and shall be counted as part of the 10-mill limit established in s. 9(b), Art. VII of the State Constitution. . . ."
As discussed in my response to Question One, section 212.055(6), Florida Statutes, requires that, upon adoption of a school capital outlay surtax, non-capital local school property taxes must be frozen at the rate imposed in the year prior to implementation of the surtax. In the situation you have described, the surtax would be imposed on January 1, 2006. This would result in a freeze on non-capital local school property taxes at the rate imposed in 2005.
The school board may not simultaneously (that is, both to become effective on January 1, 2006) enact a millage referendum of up to 2 mills in accordance with section 1011.71, Florida Statutes, to avoid the freeze requirements of section 212.055(6), Florida Statutes, as the legislative directive for a freeze is clearly expressed.[7] The school board may not do indirectly that which it is precluded from doing directly by section 212.055(6), Florida Statutes.[8]
Thus, it is my opinion that the Monroe County School Board may, with the approval of the voters, impose a school capital outlay surtax pursuant to section 212.055(6), Florida Statutes, which will become effective January 1, 2006. At that time, the school board must freeze the rate of non-capital local school property taxes at the millage rate imposed in the year 2005. The school board may not avoid the statutorily mandated freeze on non-capital local school property taxes by securing voter approval of an operating budget referendum imposed pursuant to section1011.71, Florida Statutes, which would become effective simultaneously with the school capital outlay surtax. However, the school board may, with voter approval, raise the millage rate for non-capital local school property taxes prior to January 1, 2006, so that the resultant freeze on this millage imposed by section 212.055(6), Florida Statutes, will be at the higher rate.
Sincerely,
Charlie Crist Attorney General
[1] See, s. 1001.32(2), Fla. Stat., stating that district school boards shall operate, control, and supervise all free public schools in their districts and "may exercise any power except as expressly prohibited by the State Constitution or general law." Cf., Ops. Att'y Gen. Fla. 80-87 (1980) (origin of the municipal taxing power and the limitations on its exercise are found in ss. 1[a] and 9[a], Art. VII, Fla. Const., and such laws as may be enacted by the Legislature); 79-26 (1979) (municipality has no home rule powers with respect to the levy of excise or non-ad valorem taxes and exemptions therefrom).
[2] Section 212.055(6)(c), Fla. Stat.
[3] Legal Environmental Assistance Foundation, Inc. v. Board of County Commissioners of Brevard County, 642 So.2d 1081, 1084 (Fla. 1994). And see, State v. Mark Marks, P.A., 698 So.2d 533, 534 (Fla. 1997) (when the language of a statute is clear and unambiguous, the language should be given effect without resort to extrinsic guides to construction).
[4] See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952); Thayer v. State,335 So.2d 815, 817 (Fla. 1976).
[5] And see, section 212.054(1), Florida Statutes, which provides that "[n]o general excise tax on sales shall be levied . . . unless specifically authorized in s. 212.055. Any general excise tax on sales authorized pursuant to said section shall be administered and collected exclusively as provided in this section."
[6] Section 212.054(5), Fla. Stat.
[7] A legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way. See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Dobbs v. Sea Isle Hotel,56 So.2d 341, 342 (Fla. 1952); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[8] See, Green v. Galvin, 114 So.2d 187 (Fla. 1st DCA 1959), cert. den'd, 116 So.2d 775 (Fla. 1959), appeal dism'd, 117 So.2d 844 (Fla. 1960).